### STORY *v.* STATE.

(En Banc. Nov. 19, 1923.)

[97 So. 806.  No. 23491.]

1. RAPE.  *Evidence held to sustain conviction.*
   In a prosecution for rape, in which the defendant denied having had intercourse with the prosecutrix, evidence *held* to sustain conviction.

2. CRIMINAL LAW.  *Argument of counsel constituting an appeal to race prejudice held ground for reversal.*
   In a prosecution of a negro for rape of a mulatto, in which the defendant was given a death sentence, statement of prosecuting counsel, in argument to the jury, that "the evidence shows the defendant, while ravishing this woman, said to her, 'White woman, stop your hollering!' Look at her—she is almost white," *held* ground for reversal, being an appeal to race prejudice.

3. CRIMINAL LAW.  *Improper argument prejudicing jury is ground for reversal.*
   Improper argument of counsel which will materially prejudice the minds of the jury against the accused is a substantial wrong done him in the trial, for which there must be a reversal.

APPEAL from circuit court of Holmes county.
· HON. S. F. DAVIS, Judge.

Columbus Story, alias Lum Story, was convicted of rape, and he appeals.  Reversed and remanded.

*E. T. Neilson,* for appellant.

It was error to force Lum Story to exhaust his peremptory challenges by holding the jurors were competent who testified on their *voir dire* that they had read an account of the alleged crime in the Lexington Advertiser, had formed and expressed opinions and would enter the jury box with such opinions, and that it would take evidence to remove such opinions, and that they were guided in the ordinary affairs of life by their opinions, and to hold as qualified jurors men who had pending cases in which the attorney assisting the prosecution was their attorney under their employment or under the employment of a near relative in whose cause, a sister's, they were enlisted deeply, and more especially is this true considering the condemnatory articles in the Lexington Advertiser and the rehearsal or statement of case closely in line with the testimony of the prosecutrix, except in a few points.

"Juror who states that he has a fixed opinion from what he had read to remove which will take strong enough evidence to convince, is incompetent, though he states that he is not interested and will be governed by the law and the evidence as presented. *James M. Murphy* v. *State of Miss.,* 92 Miss. 203, 45 So. 865."

Where the defendant used every peremptory challenge allowed him it was fatal error to overrule his challenges of disqualified jurors for cause. *Dixon* v. *State,* 59 So. 5. The closing argument by the counsel assisting the district attorney in its bitter denunciations and fierce racial appeal, considering the nature of the case was fatally injurious to defendant, was not based on fact, and vitiates the judgment of conviction.

"Within the limits of the testimony, the right of argumentation, illustration, and comment is free' but that freedom does not extend to the assumption of facts not in evidence, as to the basis of argument, to the prejudice of the adverse party." *Perkins* v. *Guy,* 55 Miss. 153.

"Where the counsel for the state in a capital case, so abuses his privilege in argument and comment on the testimony as, by misstating facts or commenting on facts not in evidence, as to induce the belief of probable injustice as a result, the Circuit Court should interfere, and if it does not this court will reverse." *Cavanah* v. *State,* 56 Miss. 299.

In the argument counsel for the prosecution was permitted, without interference by the court to say that defendant is a man of bad, dangerous, and desperate character, but I am not afraid to denounce the butcher boy, although I may, on my returning to my house, find it in ashes over the heads of my defenseless wife and children. Held, that this being the unsworn statement of a fact by counsel which had it been offered in evidence would have been incompetent, and being of a character well calculated to influence the jury against the accused, it presents a good ground for the reversal of the judgment and the granting of a new trial. *Martin* v. *State,* 63 Miss. 505.

"For counsel for the state on a prosecution for murder of revolting barbarity, where the testimony on which a conviction must rest is of a doubtful character, to make the statements in his argument, having no predicate in the facts, that if the jury turned the defendant loose he might perpetrate his lust on some of the white women of the county; and that he was satisfied defendant's motive for committing the crime was because he was lusting after the wife of the person killed," is ground for a reversal. *Sykes* v. *State,* 42 So. 875.

"Race prejudice has no place in the jury box, and trials tainted by appeals thereto cannot be said to be fair and impartial. It is the duty of the court to see that the defendant is tried according to the law and the evidence, free from any appeal to prejudice or other improper motive, and this is emphasized when a colored man is placed upon trial before a jury of white men. Mulattoes, negroes, Malays, whites, millionaries, paupers, princes and kings

in the courts of Mississippi are on precisely the same and exactly equal footing, all must be tried on the facts and not abuse, trials are to vindicate innocence or ascertain guilt, and are not to be vehicles for denunciation.

"Every defendant at the bar of his country, white or black, must be accorded a fair trial according to the law of the land, and that law knows no color. *Hardaway* v. *State,* 99 Miss. 223, 54 So. 833, Ann. Cas. 1913 D 1116, 88 Miss. 259."

"The injection of race question into court trials has been uniformly condemned by this court. *Mosely* v. *State,* 112 Miss. 858."

"Where on a trial for murder the district attorney characterized accused as a bad negro, although the evidence did not support such charge, and further stated that he never prosecuted innocent persons, and he had investigated this case, such remarks constituted reversible error, where the court sustained defendant's objection to the remarks but did nothing more." *Kelly* v. *State,* 113 Miss. 850.

"Manifestly, the district attorney went out of the record, and in doing so he appealed to racial prejudice and Southern sentiment upon the crime laid at appellant's door. This was wrong and may have been a strong factor with the jury. Reversed and Remanded." *Garner* v. State, 120 Miss. 750, 751, 752. 83 So. 83.

*S. C. Broom,* Special Assistant Attorney-General, for the state.

The remarks of Mr. Pepper, the counsel who assisted the district attorney in the prosecution of this case alleged to be improper as shown by the special bill of exceptions, is as follows: "The evidence shows that the defendant while ravishing this woman said to her 'White woman stop your hollering.' Look at her—she is almost white. This shows you where his passions are leading to."

And continuing his remarks he said: "This is one of the most desperate criminals in this country. Who would feel safe with this man at large? The penitentiary would not hold him a minute. He should not be allowed to breathe the same air with you nor with the people of this county or state. Six feet of earth with him under it is his only proper place. There is but one instruction applicable to him and that is the first part of the first instruction on the form of your verdict which should be returned without any modification and that is your duty to do and make your return—'We the jury find the defendant guilty as charged.'"

Much has been written on the subject of proper discussion with reference to the argument of counsel, in cases both civil and criminal, and the general rule seems to be stated in 2 R. C. L. 411, as follows: "Counsel should not be too closely confined in his argument to the jury. The most liberal freedom of speech should be allowed. He should be permitted to discuss the facts proven or admitted in the pleadings, arraign the conduct of the parties, and attack the credibility of witnesses, and he may indulge in oratorical conceit or flourish. He may repeat the evidence *verbatim* for the purpose of commenting on it in the connection in which it was introduced at the trial, . . . It is now generally conceded that counsel properly may state his views thereon, and his conclusions deduced from the evidence in the case . . . Where there is some evidence before the court from which facts stated by counsel in argument can be inferred, he will be justified in making such inference although the evidence by which it is sought to be maintained is not strong or clear."

And again on page 415 of 2 R. C. L. it is said: "Counsel may legitimately appeal to the jury to perform their duty in the particular case, and in that connection may refer to the fact that litigation is expensive and that the jury should agree on a verdict if possible."

And on page 416 of this same volume we find the following: "And it has been ruled that he may state to the jury that if a verdict for a less crime than murder is returned, the defendant will probably be pardoned."

In the case of *Harwell et al.* v. *State*, 129 Miss. 858, 93 So. 366, this court speaking through Justice ETHRIDGE, held in accordance with the general rules as stated in 2 R. C. L., *supra*.

After citing many authorities in the Harwell case the court said: "In matters of argument counsel necessarily must have a wide latitude. His illustrations may be as varied as the resources of his genius; his argumentation as profound as learning and logic can make it. He may give wing to his wit and play to his imagination, so long as he deals with the evidence in the case and the deduction to be drawn from the testimony; but he should never allow himself to imagine facts not in evidence, nor allow his wit to wing him out of the record."

We commend this quotation to the consideration of this court now as being a most eloquent and concise statement of the rule with reference to improper remarks on the part of counsel in any case.

An examination of every authority cited by counsel for appellant, and indeed an examination of every case that has ever been reversed because of improper argument on the part of a prosecuting attorney, will disclose that they were reversed because of the fact that the prosecuting attorney did go out of the record; that he did appeal to the jury for a conviction based upon some other evidence than that which was in the record. And so long as counsel stays within the record he may make any reasonable deductions from the testimony, and we submit that by this rule there has been no improper language used by the prosecuting attorney in the case at bar.

Argued orally by *E. T. Neilson*, for the appellant, and *S. C. Broom*, Special Assistant Attorney-General for the state.

133 Miss.—31

HOLDEN, J., delivered the opinion of the court.

Columbus Story, a negro man, appeals from a conviction and death sentence on a charge of raping Katy Ammons, a bright mulatto woman, about eleven miles south of Lexington, Holmes county.

We shall omit stating the details of the revolting and nauseating crime as appears from the record, except enough of the occurrence necessary to an understanding of the decision.

Katy Ammons, a teacher and demonstrator in the colored schools of the county, left Lexington going south on the public road in a Ford car going to her work. About eleven miles out she stopped on account of a punctured tire. The appellant, Columbus Story, and a boy, came up and attempted to mend the tire; but failing, he induced her to take a road leading in another direction, sending the boy away to get material with which to mend the tire.

After she and appellant had gone some distance in the road, he took hold of her by the neck and breast, and pulled her out of the car and raped her twice, accompanying his acts with ferocious brutality, repulsive and unnecessary to mention now. She resisted and made outcry, and finally reached home in a mutilated and lacerated condition, as shown by physicians who examined her. While ravishing her, he bit her breasts and body, and "slobbered and spit in her mouth"; and "when I hollered he would say, 'Hush up, white woman; hush up, white woman,' and had intercourse with me," she testified.

The appellant testified in his own behalf, and admitted practically everything, except he denied having intercourse with prosecutrix or that he mistreated her in any way. He said he knew her, and denied saying anything about "hushing up" or that she was raped. There were some slight circumstances corroborating his story. However, the jury was well warranted in finding him guilty as charged.

Several grounds for reversal are urged by appellant, but we shall notice but one, which will compel us, reluctantly, to reverse the judgment, and the others may not arise upon a new trial. It is contended that certain language used in the closing argument of prosecuting counsel before the jury was improper and highly prejudicial to the accused, and we cannot escape the conclusion that the point is well taken, because the injury done was not harmless, and may have caused the conviction, or at least may have resulted in fixing the death instead of life imprisonment. In his closing argument to the jury the counsel for the state said, as shown by the special bill of exceptions:

"I, too, appear in this case without fee as volunteer counsel at the solicitation of the superintendent of education in this county, to prevent such crimes as this and to make it safe for women to travel over the roads of this county.

"The state did not cross-examine the defendant, because his looks proved his guilt. Mr. Neilson his attorney says no man could accomplish two rapes in the time and manner testified to by Katy Ammons. He told the truth as to this, for it was not a man but a beast that accomplished and committed this crime. 'There he is, that human gorilla. What are you going to do with him? Turn him loose on society.'

"(Thereupon E. T. Neilson, attorney for defendant, objected to the above remarks and personal allusions to defendant and asked action of the court, but the court took no action to which defendant then and there excepted. Mr. A. M. Pepper then continued his denunciation of defendant as a human gorilla, a slobbering wild boar, and a mad dog.)

"Continuing his remarks Mr. Pepper said, among other things, in substance: 'The evidence shows the defendant while ravishing this woman said to her, "White woman, stop your hollering." Look at her—she is almost white. This shows you where his passions are leading to.' (This was objected to by attorney for defendant and the action

of the court called for, but the court took no action other
than merely saying, 'He said what it was leading to.')

"Further continuing his remarks, Mr. Pepper said in
substance, "This is one of the most desperate criminals in
this country. Who would feel safe with this man at large?
The penitentiary would not hold him a minute. He should
not be allowed to breathe the same air with you nor the
people of this county or state. Six feet of earth with him
under it is his only proper place. There is but one in-
struction applicable to him, and that is the first part of the
first instruction on the form of your verdict which should
be returned without any modification, and that is your
duty to do and make your return. 'We the jury find the
defendant guilty as charged.' "

We think the argument of the prosecuting counsel was
improper in many respects and very damaging to the ac-
cused. The language used:

"The evidence shows the defendant while ravishing this
woman said to her, 'White woman, stop your hollering.'
Look at her—she is almost white. This shows you where
his passions are leading to. (This was objected to by at-
torney for defendant and the action of the court called
for, but the court took no action other than merely saying,
'He said what it was leading to.')"—cannot be considered
other than an appeal to race prejudice. This was espe-
cially harmful to the defendant, and must have borne heav-
ily against him under the particular circumstances. It
may have caused the death penalty to be fixed instead of
life imprisonment, or possibly an acquittal.

Improper argument of counsel which will materially
prejudice the minds of the jury against the accused is a
substantial wrong done him in the trial, for which there
must be a reversal.

The fair and reasonable deductions and inferences to
be drawn and argued from the evidence in the case do not
warrant the objectionable language used, so far as show-
ing guilt of the crime now charged, by the prosecuting

counsel. Such arguments are based upon an immaterial conclusion not legally in the case, and if influential with the jury results in a verdict not obtained solely upon the evidence but upon passion and prejudice engendered by injecting a foreign matter, and thus the accused is denied a fair and impartial trial guaranteed to every human being under the law of the land.

*Reversed and remanded.*

SMITH, C. J. (dissenting).

The guilt of the appellant is so manifest that no verdict other than one of guilty could have been rendered by the jury without disregarding both the law and the evidence, and the circumstances surrounding the commission of the crime are such that there is no probability that a milder punishment would have been imposed.

Consequently the error for the commission of which the judgment of the court below is to be reversed was harmless.